■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH LYONS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Rubin, J.), rendered September 9, 1982, convicting him of robbery in the first degree and criminal use of a firearm in the first degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered.

Several of the prosecutor's actions combined to deprive defendant of a fair trial. Defendant, who testified in his own behalf, admitted on cross-examination that there had been a shooting incident involving several auxiliary police officers, including himself, to dramatize the need for bullet-proof vests. While the prosecutor claimed he was using this incident solely to impeach defendant's credibility, several of his remarks were clearly and improperly aimed at establishing criminal propensity (*People v Sandoval,* 34 NY2d 371; *People v Valenti,* 78 AD2d 558). Most egregious of those was a remark in the People's closing statement. The prosecutor stated, "consider [the bullet-proof vest

incident] as to what type of person this person is. A person who would perpetrate a fraud on the Police Department to advance his own interests [Objection to use of word 'fraud' sustained.] I submit * * * that he is doing the same thing now. He is advancing his own interests over the interest of society". The prosecutor could hardly have made a clearer propensity argument.

The prosecutor also set forth a motive based on assumptions that were not supported by a fair reading of the evidence. He said, "How is he supporting himself? Who is going to pay for that tattoo he got * * * Do you think his protective mother is going to pay for somebody to stick little needles in his arm? * * * He had a motive to commit the robbery". Nothing in the record supports the unstated assumptions upon which this argument is based, that tattooing is expensive, that his mother would disapprove or that she closely monitored his spending habits, or even that defendant was low on funds. These assumptions were at least as unfounded and prejudicial as those in *People v Wright* (41 NY2d 172). There, the prosecutor inferred that defendant sold drugs from the fact that he was unemployed and yet had money to sustain a drug-use habit — a habit that clearly exceeds a tattoo in expense.

The prosecutor also elicited testimony about a getaway car that was owned by a suspected accomplice. There was nothing to link that car to defendant. Such a use of irrelevant evidence is not to be condoned, especially where it has prejudicial potential (*People v McKnight,* 52 NY2d 760). The effect of this testimony was compounded by placing the suspected accomplice on the witness stand when the prosecution knew it was not prepared to grant him immunity. The People withdrew this witness before he commenced testifying, but not without leaving the possibility of speculation that this suspect would have implicated defendant had he testified (see *People v Pollock,* 21 NY2d 206; *People v Levy,* 15 NY2d 159, 166).

The evidence of defendant's guilt in this case was not overwhelming. It rested solely upon the identification testimony of the robbery victim, who first identified defendant as the perpetrator when she saw his picture in the newspaper in connection with the bullet-proof vest incident three weeks later. While this did not impermissibly taint her identification, it was a factor in assessing its reliability. Her testimony was also unclear and her answers to questions sometimes unresponsive, a problem exacerbated by her imperfect grasp of the English language.[*] The defendant produced his mother and his sister as alibi witnesses to corroborate his own testimony that he was at home asleep on the morning of the robbery.

---

[*] It may be wise to use a Spanish interpreter upon retrial.

Where the evidence is not overwhelming, a new trial is required if there is a significant possibility that the above errors affected the verdict (*People v Crimmins,* 36 NY2d 230, 242). Especially where the evidence of guilt rests solely upon identification testimony, a trial that is "as error free as possible" is essential (*People v McCann,* 90 AD2d 554, 555). That clearly was not the case here. Defendant is entitled to a new trial that is free of these errors and improprieties.

Several other errors during the trial, while not causing serious prejudice by themselves, contributed to the unfairness of the trial. The court should not have admitted a detective's hearsay testimony that the complainant had identified defendant before his arrest (*People v Ross,* 79 AD2d 666, 667). The trial court also gave the jury insufficient and unclear instructions on the level of certainty required for a single witness identification case (*People v Daniels,* 88 AD2d 392, 401), and on the People's burden to disprove an alibi beyond a reasonable doubt (*People v Victor,* 62 NY2d 374, 378; *People v Knowell,* 94 AD2d 255, 259-260). These deficiencies will be avoided if upon retrial the court employs the language suggested in these cases (*People v Daniels, supra,* p 401; *People v Knowell, supra,* p 260; 1 CJI, § 10.01, part A). Thompson, J. P., O'Connor, Niehoff and Boyers, JJ., concur.