*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: April 21, 2016          106336
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                   Respondent,

        v                               MEMORANDUM AND ORDER

AUDELIS CRUZ,
                   Appellant.
_____

Calendar Date: February 16, 2016

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Clark, JJ.

_____

Andrew Kossover, Public Defender, Kingston (Michael K. Gould of counsel), for appellant.

D. Holley Carnright, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

_____

Lynch, J.

Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered November 7, 2013, upon a verdict convicting defendant of the crimes of murder in the second degree and petit larceny.

In February 2013, Anita Jacobs-Royer (hereinafter the victim) was discovered dead in her residence in the City of Kingston, Ulster County. An autopsy revealed that the victim had been strangled and, by the time she was discovered, she had been dead for approximately 48 hours. During the ensuing investigation, surveillance video was recovered showing the victim with defendant two days before her body was discovered, the victim's car was found abandoned behind the hotel where

defendant had been staying, and defendant's wife reported to a police investigator that defendant had just given her a new camera and the serial number on the camera matched that found on an empty box in the victim's home.  On February 10, 2013, defendant was arrested in New York City for a parole violation and was transported to the Department of Corrections in Long Island City, Queens County.  During a subsequent interview, defendant admitted to two officers from the Kingston Police Department that he strangled and killed the victim.

In March 2013, defendant was indicted for the crimes of murder in the second degree and petit larceny.  After a pretrial Huntley hearing, County Court ruled that the statements that defendant made to the investigators were voluntary.  At the jury trial, the audio recording of defendant's interview with the police was submitted as evidence and officers were allowed to testify with regard to telephone calls that defendant had made to his family during the interview.  Ultimately, defendant was convicted as charged and sentenced to an aggregate prison term of 25 years to life.  Defendant appeals, arguing only that County Court should not have permitted the statements he made to the police to be introduced as evidence.

A statement by a defendant is involuntary and thus inadmissible if it is obtained through "undue pressure" or "by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself [or herself]" (CPL 60.45 [2] [a], [b] [i]; see People v Neal, 133 AD3d 920, 922 [2015], lv denied 26 NY3d 1110 [2016]).  It is the People's burden to prove beyond a reasonable doubt that statements were voluntary (see People v Mattis, 108 AD3d 872, 874 [2013], lv denied 22 NY3d 957 [2013]).  The issue is a factual one resolved after consideration of the totality of the circumstances, and we accord deference to the trial court's credibility determinations (see People v Perkins, 124 AD3d 1062, 1063 [2015], lv denied 26 NY3d 933 [2015]; People v Whitted, 117 AD3d 1179, 1181 [2014], lv denied 23 NY3d 1026 [2014]).

At the Huntley hearing, Eric VanAllen – a detective with the Kingston Police Department – testified that he and another

detective, Richard Tierney, traveled from Kingston to Long Island City after learning that defendant had been arrested on a parole warrant. VanAllen further testified that he introduced himself to defendant and advised that they would be taking him back to Kingston for questioning and defendant said, "let's talk now." Defendant was taken to a conference room where he, VanAllen and Tierney ate fast food together. VanAllen testified that when they finished eating, he read defendant his Miranda warnings from a card, asked defendant whether he understood the warnings and whether he was willing to answer questions. VanAllen testified that defendant agreed and answered their questions for approximately 20 minutes before VanAllen left to get an audio recorder. The audiotape of the interview was submitted to County Court for review.

During the remainder of the interview that lasted approximately 45 minutes, defendant was allowed to telephone his daughter and wife and was given breaks to use the restroom and smoke cigarettes. When VanAllen asked defendant, "like I told you before . . . your Miranda warnings, you understand those," defendant responded, "you really have to record this?" Defendant proceeded to explain that he "just snapped" and strangled the victim from behind with his hands before tying a shoestring around her neck. Later, VanAllen asked defendant, "you still understand your Miranda warnings?" and defendant responded, "Yeah I know that." During the telephone call that was made in the officers' presence and included as part of the audiotape, defendant told his wife, "That camera I got from somebody that I killed." Defendant acknowledged during the interview that the officers had treated him fairly and with respect and that he was telling the truth.

We find that County Court properly denied defendant's motion to suppress his statements. The court credited VanAllen's testimony that the Miranda warnings were given but not recorded because they did not initially plan to question defendant in Long Island City and that once questioning was underway and the recording began, he did not want to "stop the flow" of the interview to issue the Miranda warnings again. At no point during the interview or during defendant's conversations with his wife did defendant ever ask to speak with or retain an

attorney (see People v Jabaut, 111 AD3d 1140, 1141-1142 [2013], lv denied 22 NY3d 1139 [2014]; People v Cole, 24 AD3d 1021, 1022 [2005], lv denied 6 NY3d 832 [2006]).  Although VanAllen testified that defendant clearly appeared to be homeless and that defendant stated "that he had been doing drugs for the past week or so," he described defendant as "mentally coherent," and the audiotape recording does not evince otherwise.  Accordingly, based on the totality of the circumstances, and giving the requisite deference to County Court's credibility determinations, we agree that the People established that defendant waived his Miranda rights and that his statements were voluntary (see People v DeAngelo, 136 AD3d 1119, 1120 [2016]; People v Nadal, 131 AD3d 729, 729-730 [2015], lv denied 26 NY3d 1041 [2015]; People v Jabaut, 111 AD3d at 1142; People v Hughes, 280 AD2d 694, 695 [2001], lv denied 96 NY2d 801 [2001]).

McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court